THE STATE OF OHIO, APPELLEE, *v.* NAYLOR, APPELLANT.

(No. 3036—Decided December 17, 1980.)

*Mr. Joseph R. Grunda,* prosecuting attorney, for appellee.
*Mr. Michael F. Becker,* for appellant.

BELL, P. J.   Defendant-appellant, Jamie Naylor, was one of four men charged with crimes arising from an unlawful entry into an occupied structure on November 18, 1979. Naylor, in connection with this unlawful entry, was indicted for and convicted of the crimes of aggravated burglary (R. C. 2911.11) and forcible rape (R. C. 2907.02). He seeks now to reverse the judgments rendered against him below, contending that the trial court erred to his prejudice in the following respects:

*Assignments of Error*

"I. The lower court abused its discretion in refusing to grant a severance of defendant's trial, pursuant to Criminal Rule 14.

"II. The lower court abused its discretion by permitting the introduction of an alleged confession by defendant Naylor in contravention of Criminal Rule 16.

"III. The lower court abused its discretion in permitting officer Escalante to testify regarding a prior criminal charge against defendant Naylor.

"IV. The lower court abused its discretion by limiting the extent of cross-examination of state witness Taylor.

"V. The lower court abused its discretion by limiting the questions posed to defendant's witness, officer Robbins.

"VI. The lower court erred, as a matter of law, by requiring the defendant to give a voice exemplar in the courtroom, in contravention of his Fifth Amendment constitutional right.

"VII. The lower court erred, as a matter of law, in requiring the defendant to give a voice exemplar in the courtroom in contravention of defendant's constitutional due process rights.

"VIII. The lower court abused its discretion by interrupting defendant's counsel's closing argument and dismissing the jury during such argument."

*Facts*

On November 18, 1979, the residence occupied by Mr. and Mrs. Harold Schatschneider was burglarized by four men. During the time that three of these men were in the home, they awakened both of the residents demanding that the couple tell them where money was kept. These demands were accompanied by verbal threats. The conversations which took place and the voice qualities of those who spoke were clearly remembered by both of the Schatschneiders. In spite of the fact that the burglars were informed of the location of the couple's jewelry and money, the residence was ransacked and completely disarranged. Of much more importance than any of these acts of vandalism was the brutal rape of Mrs. Schatschneider by two of the burglars prior to their leaving the house.

The four men were apprehended and a subsequent search of one of their residences yielded a portion of the burglary loot. After all four were indicted, two of them, Danny Bailey and Robert Taylor, entered pleas of guilty to lesser crimes and testified on behalf of the state against Naylor and Robert Arbogast. That testimony was a major factor in Naylor's conviction, the subject of this appeal.

*Discussion*

For the purpose of this opinion, we choose to discuss the claims of error in a somewhat reversed order from that set forth in the appellant's brief.

Defendant contends, in assignments six and seven, that the trial court erred in requiring him to "give a voice exemplar in the presence of the trial jury." Before any discussion of defendant's contention, we suggest that the phrase "voice exemplar" is used here incorrectly to describe the testimony complained of. In the generally accepted meaning given these words, an exemplar is a "sample" of one's handwriting or fingerprint characteristics, or of one's voice submitted for the purpose of comparative testing by qualitative standards leading to an identification of that sample as bearing on the question of the identity of the person giving it. Voice exemplars, given under circumstances dissimilar to those before us now, have been upheld in state and federal jurisdictions. See *State* v. *Olderman* (1975), 44 Ohio App. 2d 130; *United States* v. *Dionisio* (1973), 410 U. S. 1; *State* v. *Sutton* (1979), 64 Ohio App. 2d 105.

The instant question tests the validity of an in-court voice identification as opposed to a pretrial out-of-court identification upon which in-court identification testimony is based. See, for instance, *United States* v. *Moia* (C.A. 2, 1958), 251 F. 2d 255 (testimony admitted to identify defendant based on witness' previous telephone conversations with defendant); *Fabacher* v. *United States* (C.A. 5, 1936), 84 F. 2d 602; and *United States* v. *McCartney* (C.A. 7, 1959), 264 F. 2d 628. The two latter cases raise substantially the same issue as does the first, and all three are distinguishable factually to that under consideration here.

The record, herein, shows no pretrial attempt to establish the identity of any of the defendants by virtue of having Mr. or Mrs. Schatschneider hear and identify the voice of any one of them. Because of the circumstances surrounding the burglary and the subsequent rape, neither of the victims could identify their assailants by sight, manner of walk, or physical attribute. As mentioned, however, the voice characteristics of one or more of the voices was individual and recognizable.

But the prosecutor, over objection, and with the approval of the court, had the defendant stand (on two occasions, when

each of the Schatschneiders testified) and repeat certain key phrases which were among those remembered by the witnesses as having been said during the commission of the crimes. Each witness then identified the defendant as having been one of those persons whose voice they heard on November 18, 1979.

None of the other co-defendants were asked to repeat the prosecution's demonstration with Naylor. He, alone, was asked to repeat the following phrases for the husband:

"Put your hands behind your back, keep your head in the pillow."

"Let's kill him, he is lying to us."

"I am going to kill him."

"This guy's cousin is lying."

Hearing these words, Mr. Schatschneider was asked if that was the voice he heard on November 18, 1979; he answered, "The voice sounds like the voice that I heard." The witness' wife was asked to hear the defendant repeat the threats that were made to her, including, "Shut up or I will slit your throat." To her, the voice " * * * sounded like the voice of the first man that raped me."

Thus, defendant, in an in-court setting, was required to be the subject of a voice demonstration wherein he was also required to repeat the somewhat emotion-inspiring words used during the course of the commission of the crimes. The setting is far different than those referred to in the various opinions cited above. Each witness, we note, testified that the voice "sounded like" the voice of one of the burglar-rapist, not that it *was* that person's voice. In addition, no opportunity was offered to the defendant to offer a comparative demonstration.

While questions obviously may be raised concerning the credibility or weight of a witness' identification, the real question raised here by the demonstration involves defendant's rights under the Fifth and Fourteenth Amendments to the United States Constitution.

We hold that where, as here, the defendant is required to repeat, over objection, words and sentences used during the progress of a crime by one of the perpetrators of that criminal act, and where the defendant is required to speak those words and sentences in the presence of the trial jury, and when this demonstration is carried out for the express purpose of allow-

ing the victim of the crime to arrive at an in-court identification of the speaker, such a requirement is violative of the defendant's rights under both the Fifth and Fourteenth Amendments to the United States Constitution.

The court-mandated order that defendant reiterate the words alluded to, we believe, was of such a nature as to equate to the giving of testimony on his part, and was, thus, violative of his right to preclude self-incrimination. *Malloy* v. *Hogan* (1964), 378 U. S. 1, 8; *Holt* v. *United States* (1910), 218 U. S. 245, 252-253; *Schmerber* v. *California* (1966), 384 U. S. 757, 760-765. The use of his voice alone in the manner indicated, absent comparative standards of any type, involves his right of due process in regard to the trial of the cause against him. In short, we are of the opinion that the demonstration conducted was such as to be violative of the constitutional rule of fundamental fairness in trial proceedings. See *Rochin* v. *California* (1952), 342 U. S. 165; *Breithaupt* v. *Abram* (1957), 352 U. S. 432.

Where but one defendant, in a situation similar to that occupied by Naylor, is required to utter the damning phrases associated with the perpetrator of the crime, it is much too easy a matter for the trier of facts to see the defendant, not as an unwilling partner in the demonstration, but as the man who spoke the words originally. For all of these reasons, we find merit in defendant's claim of error in assignments six and seven.

We also hold the error to be prejudicial and not harmless in nature. We reach this decision in spite of the mass of testimony offered by others against the defendant. We are of the opinion that the testimony complained of here was of little necessity in the prosecution's proof of the cause, but, when offered, was of such import that the rights of the defendant were definitively prejudiced. On this basis, we reverse the judgment and remand this cause for further trial proceedings according to law.

In so doing, we note that we have considered the remaining assignments of error and reject them in turn. The court's decision to allow the defendant to take the deposition of officer Escalante, thus, permitting defendant to obtain needed information concerning any statements made by defendant to the police, was clearly within the prerogative set forth in Crim.

R. 16. On the basis of our review of the record before us, we hold that the trial judge did not abuse his discretion in refusing to grant defendant's motion for severance, or in limiting the examination of state's witnesses Taylor and Robbins. Any error concerning defense counsel's final argument must be considered to be harmless. The allowance of officer Escalante's testimony, relating to the existence of a pending warrant for defendant, was not error. We, thus, find no merit in assignments one thru five, nor in assignment eight.

The judgment of the Court of Common Pleas of Lorain County is reversed, and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

VICTOR and MAHONEY, JJ., concur.

MAHONEY, J., concurring. I concur in those portions of this opinion which hold that there was a due process violation here because fundamental fairness was not accorded the defendant. However, I do not agree that it is also self-incrimination. The defendant could have been required to speak those words in a proper, fundamentally fair pretrial hearing, in camera, or in a voice exemplar situation, but *not* in the unfair manner used in this case.